# UNITED STATES DISTRICT COURT

**NORTHERN** DISTRICT OF **ILLINOIS, EASTERN DIVISION**

UNITED STATES OF AMERICA

v.

HECTOR CEPEDA and
JOSE ALFREDO GOMEZ

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 05CR638

FILED
JUL 15 2005
MAGISTRATE JUDGE JEFFREY COLE
UNITED STATES DISTRICT COURT

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>July 13, 2005</u>, in <u>Cook</u> county, in the <u>Northern</u> District of <u>Illinois, Eastern Division</u>, defendants did,

> conspire with each other, and others known and unknown, to knowingly possess with intent to distribute a controlled substance, namely approximately 916 grams of mixtures containing methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1),

in violation of Title <u>21</u>, United States Code, Section <u>846</u>, and Title <u>18</u>, United States Code, Section <u>2</u>.

I further state that I am a <u>Special Agent of the U.S. Drug Enforcement Administration</u> and that this complaint is based on the following facts:

PLEASE SEE ATTACHED.

Continued on the attached sheet and made a part hereof:  **X** Yes  ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

July 15, 2005                    at    Chicago, Illinois
Date                                   City and State

Jeffrey Cole, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

I, Christopher J. Geer, being duly sworn under oath, depose and state as follows:

1. Affiant is a Special Agent with the Drug Enforcement Administration ("DEA") and has been so employed since August 2003.

2. Affiant is a member of an enforcement group within DEA which specializes in the enforcement of Title 21 of the United States Code. The following averments are based on my personal knowledge, and on conversations I have had with: (i) a Confidential Source ("CS"); (ii) other DEA agents who participated in the investigation of HECTOR CEPEDA and JOSE ALFREDO GOMEZ; and (iii) at least one non-law enforcement witnesses.

3. This affidavit does not contain all facts known to me about this investigation.

4. On or about July 10, 2005, CS, who has provided reliable information to the DEA in the past, advised DEA agents that, on or about July 8, 2005, CEPEDA informed CS that he had a lot of "ice" and would sell CS the "ice" for $11,000 per pound, but only in one-pound transactions. CEPEDA also provided CS with a plastic bag containing a white, chunky substance, which CEPEDA referred to as a "sample." (This substance field tested positive for methamphetamine.)

5. Based on my training and experience, "ice" is a common slang term for methamphetamine.

6. On or about July 11, 2005, CS and CEPEDA spoke by telephone. During this conversation, which was recorded:

   a. CEPEDA informed CS that he was ready to deal the methamphetamine to CS;

   b. CS informed CEPEDA that the person for whom CS was purportedly buying the methamphetamine (the "buyer"): (i) liked the "sample"; (ii) wanted to purchase

methamphetamine in quantities larger than one pound; and (iii) wanted to know if CEPEDA would lower the $11,000 per pound price; and

c. CEDEPA refused to sell more than one pound of methamphetamine per transaction, but agreed to lower the per pound price of the methamphetamine to $10,700 and offered to make multiple back-to-back one-pound sales to CS.

7. On or about July 12, 2005, CS and CEPEDA spoke by telephone, during this conversation, which was not recorded, CEPEDA asked CS whether CS had personally observed the money the buyer was going to use to purchase the methamphetamine. After CS confirmed that he had, CEPEDA stated that he would be ready to sell the methamphetamine to CS the following day.

8. On or about July 13, 2005, CEPEDA called CS in the mid-morning and informed CS that he would sell CS two pounds of methamphetamine later that day. (This conversation was recorded.) The following is a summary of the events that occurred on July 13th following CEPEDA's call to CS:

a. CS met with CEPEDA in the parking lot of a retail store near the intersection of North Cicero Avenue and West Diversey Avenue in Chicago, Illinois. During this meeting, CEPEDA told CS that, in order to get the methamphetamine, CS would have to follow two of CEPEDA's associates (GOMEZ and Individual A) who were parked nearby in a maroon Ford Crown Victoria. When CS refused to leave the parking lot, CEPEDA agreed to go get the methamphetamine for CS and left the parking lot in the Crown Victoria with GOMEZ and Individual A.

b. A short time later, the Crown Victoria dropped GOMEZ off and GOMEZ entered a green Chevrolet Tahoe and drove away. CEPEDA and Individual A then returned to the parking lot.

2

c. After returning to the parking lot, CEPEDA called CS and informed CS that he had observed police officers sitting in the parking lot, and asked CS to walk over to the Crown Victoria to get the methamphetamine. After CS refused to pick up the methamphetamine from the Crown Victoria, CEPEDA and Individual A walked into a nearby restaurant. At some point during this interaction, Individual A observed and heard CEPEDA called GOMEZ and told him to not come back to the parking lot because the police were there. A short time later, CEPEDA and GOMEZ were stopped by members of the Chicago Police Department.

d. After being stopped, CEPEDA admitted that he had discussed selling methamphetamine with CS, but that such discussions were a ruse to mislead CS into bringing money to the parking lot which CS owed to CEPEDA. CEPEDA claimed that he never intended to actually sell CS any methamphetamine.

e. Also after being stopped, Individual A stated that CEPEDA had called GOMEZ and warned him not to return to the parking lot because of the police officers' presence.

9. While certain DEA agents were interviewing CEPEDA and Individual A, other observed GOMEZ exiting a first floor apartment at 4538 N. Karlov Avenue in Chicago, Illinois. DEA agents then interviewed GOMEZ (who initially identified himself as Gabriel Ramirez), and obtained his consent to search the first floor apartment at 4538 N. Karlov Avenue, which GOMEZ admitted was a residence he shared with his three brothers.

10. A search of the apartment yielded:

a. in a locked bedroom, to which GOMEZ had a key, the following items were discovered underneath the mattress:

i. an international driver's license with GOMEZ's name and picture;

3

      ii. two bags containing approximately 916 grams of a white, chunky substance that field tested positive for methamphetamine;

      iii. a white sock containing approximately 96 individual plastic bags containing, in total, 115 grams of a white powdery substance that field tested positive for cocaine; and

      iv. two scales;

   b. in the kitchen, a black leather satchel was discovered that contained assorted items belonging to CEPEDA, including IRS forms with CEPEDA's name on them and a checkbook with CEPEDA's initials on it; and

   c. in one of the front rooms, a wallet was discovered that contained an unknown identification card for an individual named Gabriel Ramirez which had GOMEZ's picture on it.

11. During his interview, GOMEZ admitted that his actual name was JOSE ALFREDO GOMEZ and that CEPEDA had offered to pay him $500 to: (i) temporarily store the two bags of methamphetamine at GOMEZ's residence; and (ii) bring the methamphetamine to the parking lot upon CEPEDA's call.

12. The Crown Victoria is registered under the name Gabriel Ramirez of 4538 N. Karlov Avenue, Chicago, Illinois.

13. At the time GOMEZ was encountered by DEA agents, he had in his possession the keys to, among other things, the Crown Victoria, the Tahoe, the residence at 4538 N. Karlov Avenue, and the bedroom in which the two bags of methamphetamine were found.

14. The Tahoe is registered under the name Miguel Gomez (GOMEZ's brother) of 4538 N.

4

Karlov Avenue, Chicago, Illinois.

15. DEA agents arrested CEPEDA and GOMEZ.

FURTHER AFFIANT SAYETH NOT.

Christopher J. Geer
Special Agent, DEA

SUBSCRIBED and SWORN TO before me this 14th day of July, 2005

Hon. Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

5